The next case this morning, Your Honor, is 24-1419, John Doe et al. v. City of Boston et al. May it please the Court. Good morning. Patrick Driscoll on behalf of the appellants. This morning I'm with my co-counsel Janine Cotillo and Anthony Bonapane. Chief Judge Barron, we're asking two minutes for rebuttal. You may. Thank you, sir. Essentially, the crux of the appeal is a rather straightforward one. The question is whether or not the amended complaint pleaded affirmative conduct on behalf of the individual BPD defendants, the individual DCF defendants that actually enhanced the danger to John and Jane Doe who were minors in the custody of Officer Patrick Rose. Essentially, the Court did find in its motion to dismiss that it did find that there was affirmative conduct that was pled. So there isn't a question that whether or not the affirmative conduct or it was simply inaction. The Court found that the allegations that the BPD defendants impeded the DCF investigation by directing the DCF to not go into Officer Rose's home to reinterview John Doe after he was interviewed in the presence of his abuser was affirmative conduct, both of those acts. We also have in the record that the impediment of the DCF investigation by their failure to reinterview John Doe after he was interviewed in the presence of his abuser. We've now cited in our reply brief to case law that states that in isolation in regards to the interviewing of John Doe who was then 12 years old in the presence of his abuser, that in itself is sufficient to enhance the danger. And specifically, we're relying on the Doe versus Regional Public Schools Unit 21 case law. Additionally, I'm sorry, let me be Buddhist. I'm sorry. I apologize. We're also, in addition, the additional facts that the Doe v. Regional School Unit is both a shoddy investigation that ultimately leads to the victim being placed in an unsupervised access with this perpetrator. Here, we made a number of allegations that the BPD defendants, including vacating the restraining order, securing pretrial probation for Officer Rose at arraignment when his allegations were that he was sexually molesting a 12-year-old boy, all were taking steps towards placing John Doe and Jane Doe back in the custody of the abuser. The district court erroneously relied on DeShaney and Norwood. In DeShaney and Norwood, those stand for the premise that a government actor does not have a duty to protect a private party from a third party harm, from private harm. Here, we have a much different. In DeShaney and Norwood, there wasn't any allegations that they were, that the John Doe was, or the victim, child victim, was interviewed in the presence of his abuser. There's no allegation that officers in DeShaney and Norwood took affirmative steps to impede a DCF investigation. There's also no allegations in DeShaney and Norwood that there were steps taken to vacate restraining orders or to place the child victim back into the custody. Counsel, can I ask you about the restraining order arguments that you, or facts that you've alleged in your complaint? Is there any more information about that in any of the documents submitted to the district court? Or maybe I missed something in the complaint. But when you say that they agreed to vacate the restraining order, do we know anything more about what that actually means? Who asked for the restraining order? Why would they have needed to weigh in on whether a restraining order stayed in force or not? DCF, after receiving from the mandatory reporter in coverage, my understanding is that the DCF made a referral to get the restraining order through the West Roxbury Division of the BMC. My understanding is that the pretrial probation was for one year from the date of arraignment, which would have been December of 1995 to December 1996. That did not happen. It was dismissed prematurely. In regards to the allegations about Defendant Hatton and also Defendant, I believe it was Johnny Hugh, vacating the restraining order or assenting to it, that was part of the internal affairs department file that was investigating the allegations at the time. There's two different things, it seems to be, going on in the district court's opinion. One is this contention that the core of the conduct is inaction as opposed to action. And you rightly identify, as the district court seems to also identify, that there was some action. There's the interviewing in front of the abuser. That's an active choice rather than an inactive choice. There's the instructions to DCF not to go into the home. Correct. As I read the district court, it says, insofar as there is affirmative conduct alleged, it's not wrongful. Correct. Thank you. So if we thought that was a mistake because it's fairly read that it's pled that the instruction to DCF was not consistent with investigative protocols, et cetera, so taking the complaint is true. It was alleged that they didn't have a legitimate reason not to give the affirmative instruction they gave. We don't have the district court then applying our precedents in Irish and the like to whether this affirmative conduct gives rise to the kind of claim that could get passed, that could create the claim. And so how are we supposed to just take a pass at it ourselves? I realize it's a de novo question. But we don't have the benefit of the district court having weighed in on that issue directly. And what is your assessment of how the precedents do apply? Because this conduct is not Irish in many ways. There was a lot more affirmative conduct that led to the conclusions in Irish than are present here. So just help me think through. Assuming you're right that the district court erred in treating the affirmative conduct as not properly considered because it wasn't alleged to be wrongful, we disagreed with that, what then follows? I believe, Your Honor, my review was that this is very sparsely the sparse decisions on state-created danger in the First Circuit. And obviously Fowler was only decided in 2020. And that was the first case that the First Circuit actually concluded that there were facts that a state-created danger theory actually applied in the First Circuit. And so I think it's similar to what the district court did. And I don't want to speculate as to what the district court did, but he didn't go out to outside. He also relied on a case, the Pierce case, and again cited to DeShaney in Norwood. What we're asking the court to do is we've identified Lipton v. Bootish from the Sixth Circuit that said, in isolation, interviewing a minor victim of sexual abuse or rather just abuse in the presence of their abuser, there's a reasonable inference there that that would enhance the danger to that minor child at that time. And so we're asking the court the question that I would, Judge Barron, is also to look at the other cases that we cited, which is the Dovey Regional Unit 24 where it was stated that where there was a shoddy investigation by the principal and the assistant principal that were investigating the sexual misconduct between a student and a teacher, and that the failure of that investigation ultimately led to the victim being placed back into the custody of, or rather an unsupervised access, that would be one way. The other way is also Judge Barron's decision in Dovey-Boston Public Schools where she stated that just in itself in a peer-to-peer sexual assault case that discouraging the 51A reporting was sufficient to state a state-created danger theory on a 12B6 basis. So I think with that in mind, Your Honor, while I can't direct the court to, and I know my time at least is running up, I would also say one thing. And there's no qualified immunity being asserted here? No qualified immunity has been asserted. I believe Your Honor's know the Kessmerer case about that. It's not appropriate for the court to raise it to a sponte. But one thing, if I may just... Counsel, can I, just because you're out of time, the difficulty that I'm having is the district court did say, it was just in a footnote, but did say that even if you had successfully alleged affirmative acts and enhanced the danger, it indicated that it thought none of the allegations were sufficient to show that it caused the abuse, which is another part of the Fowler test. So even if we agreed with you that there were affirmative acts that enhanced the danger, tragic consequences here, how should we look at the district court's finding that there was just not enough to show, for instance, the decision to interview John Doe in front of the abusers, assuming, like you said, that that was wrong and it probably enhanced in some way Mr. Rose's fury at what was happening, how can we separate out the district court saying that there's no causation to show that that, apart from everything else that happened, the investigation that did continue and followed, there's just no indication that that act was ultimately the causal link that resulted in the years of abuse that followed. I think what the, and again, I don't want to speculate what the district court did, but I think they looked at these in isolation and said that the affirmative conduct is not wrong in any meaningful sense, I believe was the term that was used by Judge Sandler. Just so you know what I'm referring to, it's addendum 29, footnote 10, where the court specifically says there's no specific factual allegation to infer that they caused any of the alleged abuse. So it's not about wrongfulness, it's about causation, which is part of the Fowler test. I want to just draw to court to that, that you've got to look at the reasonable inferences and the facts. It's in November of 95 that the complaint is made. It's December of 95 that he's arraigned and awarded pretrial probation. By February of 96, the restraining order is vacated. By 1996, he pleads the fifth, Officer Rose does, when he's asked, are you having relations with the minor in your custody? And then in 1997, there's a procurement of an affidavit that's saying, I, John Doe, recant the allegations. I don't see how it's reasonable for the court on the causation issue to make it at this stage to say that there is no evidence that a fact finder or anyone else could ever conclude that John Doe and Jane Doe were not placed back in the hands of their abuser and that would have made them susceptible to greater harm. I think having them placed into the hands of the abuser, again, giving you all the inferences, I think is reasonable to say that that's a causation. But I guess I was directing you to some of the other affirmative acts that you pointed out in your argument, such as the interview in front of the House, the decision to put him back on duty, because you do have to state causation or allege causation based on the Fowler test and the district court seemed to conclude that there just wasn't enough. So that's really what I was trying to focus on. There's also two, though. There's also the bodily integrity and the deprivation of constitutional, of due process, and with the deprivation of the courts. By interviewing in front of his abuser, by putting him back in the custody of his abuser, by vacating the restraining order, by doing, I'm sorry. Well, I just want to make this as a key point. I want to make sure that I understand it. The two acts the district court has in mind, the two affirmative acts the district court has in mind with respect to that footnote. And I'm sorry. I just want to look at the footnote while. It's footnote 10. It says the court also knows that even if those two affirmative acts could be inferred to enhance the danger to plaintiffs, there are no specific allegations to infer that they, so I assume those two acts, caused any of the alleged abuse. So am I right in understanding that with respect to the affirmative acts of telling DCF not to go in and interviewing in front of the abuser, the district court's position on that seemed to me to be that it wasn't clear those were wrongful and therefore shouldn't be considered. I'm sorry. But there's no, the district court didn't address causation as to those facts. Correct. I guess I was a little confused, Chief Judge, is that paragraph starts with the two acts that he identified was Commissioner Evans' decision to return him, which I think is a miscast of the allegations. We're not saying that this is an employment decision. This is about taking the acts and placing them back in. But we just don't have a causation finding as to the other affirmative acts that you contend to consider. I don't see, I'm not aware. What should we do with that? I think exactly. You go to Lipman, Boudish, you look at the other first circuits by Judge Burroughs in Dovey, Boston Public Schools, in Dovey Regional School District Unit 21, and look at how those judges analyzed the reasonable inferences based on not just isolated facts, but whether or not as a whole, on the whole of the complaint, is there a plausible factual allegation that there was an affirmative conduct that placed John Doe and Jane Doe in greater harm than placing them back in the custody of their abuser. And I think those cases, specifically the Lipman v. Boudish, the facts of those cases and the court's analysis about the reasonable inference, about the reasonable inference that if you actually are interviewing the child in front of their abuser, it is a reasonable inference for the court to take to suggest that that would enhance the danger to the child. I think in regards to the affirmative action that the court is referring to, although I don't have any direct presence to say that it is or isn't, I do believe that we can come in with our common sense and our life experience and suggest looking at the allegations as a whole and make an assessment as to whether or not it's plausible that a fact finder could conclude that this caused or enhanced the harm. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Edward Whitesell. I'm with my colleague Adam Johnson. I represent the City of Boston and the former employees of the Boston Police Department that are named as defendants in this case. There is no doubt that what happened to the Doe's children is horrific, but those were the actions of Patrick Rose off the block. Hold on one second. We're losing. Yeah, who else is from Appell? Yeah, yeah, you're right, you're right, you're right. Thank you, Steve. Counselor, if you could have a seat, please. We're going to hear from the rest of the appellants now. Oh, I'm sorry. No trouble. Thank you. Counselor, the appellants, Cotillo, please. Thank you, Counsel. Thank you, Judge. I thought we ran out of time. I didn't realize you had something to say. Go ahead. Jeanine Cotillo on behalf of the appellants. I'm just here to address a couple quick issues with regard to the Monell claims. My colleague has addressed the issues with regard to the inaction arguments, but with regard to customs and practices, the appellants have certainly pled at length that the customs and practices and policy and procedures requirements of Monell have been met. Specifically, we appended and cite to the St. Clair report, which I think sets forth sufficient or certainly an ample amount of custom and practice that the city failed to investigate and meet their hearing process requirements. And also with regard to policy, we set forth that the policy of failure to train and supervise its officers was also pled and met in this case. I only have a few seconds, but I also just wanted to address briefly that with regard to the claims that we meet against the claims against the Department of Children and Family Services, it's a unique situation in this case. We amended our complaint, and with the amended complaint, the lower court ruled on all of the defendants unilaterally, dismissing all claims against them under the 12B6 when there was not a pending motion on hand. There was no pending motion, no pending answer, no response to pleading at all by the DCF in response to our amended complaint. Therefore, the appellants have not had an opportunity to be heard to address any arguments that may or may not have ever been pled in a motion to dismiss by the DCF, and therefore we believe it was an error for the district court to dismiss all of the claims that the appellants have made against DCF. Therefore, we respectfully request that that be reversed. And I am out of town. Thank you. Counsel? Good afternoon, Your Honors. My name is Anthony Bonapane, and I'm here to address a couple of brief issues for you, specifically with the union, with Francis Rosenpatrick, our senior. I'd first like to state that 28 U.S.C. 1367A, and the cases in this district of Fisherville, the Somerville School District, and Doveytown of Plymouth are clear that there is supplemental jurisdiction should any federal law claim survive as it relates to any state law claims with those individuals. Now, when turning to the 1985 arguments, Your Honors, it is clear that there are specific standards that need to be pled, a conspiracy, conspirational purpose, an act in furtherance of that conspiracy, an injury to a constitutionally protected right, and I'd ask this court to look at Perez-Sanchez and our pleadings. Specifically, Perez-Sanchez, this circuit denied a constitutional class for a political affiliation in a wrongful termination case. What we're alleging here is that the plaintiffs in this case belong to a class that is so narrow and so specific that it is impossible to open the floodgates that were concerned with this circuit. Specifically, the appellants belong to a class of people that were in continuation of the St. Clair Commission Report, victims of cover-ups of Boston Police's internal misconduct, specific affirmative acts. When I point to the union specifically, in the St. Clair Report, it is specific that the union represents the police officer in both their pre-trial and criminal proceedings and then in their IID investigation. And if you look at our allegations also as it relates to the union, you'll note that there were two affidavits submitted to the Boston Police when Rose was sought to be reinstated, one from Frances Rose and one from John Doe, but there is no allegation that either was ever interviewed or gave statements from the union. And again, I'd remind this Court that on a 12b-6, we're entitled to deference. And lastly, Judge Reichelman, to your point with Attorney Driscoll about causation, I would also like to direct this Court to a couple specific allegations in our complaint, one that we allege that Rose was emboldened by the cover-up, the affirmative acts in other words, so the pre-trial probation. And secondly, I'd like to point this fact out that we do have a factual allegation that at his actual sentencing hearing in 2021, he said the abuse got worse afterwards. Thank you. Mr. Whitesell? Thank you, Your Honors. I apologize for jumping the queue. No problem. I should have caught it. Go ahead. Good morning, Your Honors. May it please the Court, my name is Edward Whitesell and with my colleague, Adam Johnson, I represent the City of Boston and the former employees of the Boston Police Department that are named as defendants in this case. There is no doubt that what happened was tragic, what happened to the Doe's children was tragic, but those were the actions of Patrick Rose off-duty and off-the-clock and in his home. Those actions do not give rise to federal civil rights claims against his employer, the City of Boston, and those individuals at the Boston Police Department that supervised him and investigated his crimes. The issue on appeal is simple. The only potential basis for a federal claim against the City and the Boston police officers, the state-created danger doctrine, does not apply here. We know that Patrick Rose was not acting under color of law. Rose acted as a private individual and not a police officer when he committed his horrible acts. What about the interviewing in front of the abuser and the instructions to DCF? Well, the instructions to DCF not to enter the home happened on the 10th, which was the day that they arrested Rose and took him away after they had interviewed John Doe. The instruction was because he had a gun. Well, the allegation in the complaint is that the instruction was inconsistent with investigatory protocols. But regardless, the instruction did not put John Doe in any greater danger. The instruction was to take him out of danger. So as a police officer who had a gun, his gun was taken the next day. Well, the idea is that it impeded an investigation that, had it been able to go forward faster, there would have been remedial action taken on behalf of the person. He was arrested that day. So as it relates to the Boston Police Department, they had assigned officers of the sexual assault unit on the 10th. They went to the home. They interviewed John Doe in a car. The parents were present at the home, but they weren't in the car when he was being interviewed. And this is all according to their allegations in paragraphs 118 and 119. And then they arrested him. So in the next day, he was – the allegations don't say whether he was released or whether he went home that night. There's nothing in the complaint as to what happened after that. I thought the theory was that it impeded DCF's ability to find out what happened, so that over time that led DCF not to be in a position to take action it otherwise would have taken. At some point, he's released from arrest, right? And then the abuse continues. Yes. I mean, abuse has started long before. The significance of stopping DCF from going in was DCF could have learned something at that moment that they were prevented from learning. But the law is very clear that shoddy investigations or even investigations that don't reach certain outcomes or don't determine all the facts are not enough of a state-created action. This isn't a complaint about a shoddy investigation. It's about an affirmative act to impede an investigation. But I'm unclear what outcome would have been desired here other than his arrest for sexual assault. I mean, that's what was happening on that day. I mean, if the Boston Police Department – Counsel, can I ask you this? DCF ultimately finds that there is good reason to suspect abuse, right? The outcome of its investigation, even though it doesn't interview John Doe, it interviews the principal of his school and some of his classmates, if I recall correctly, and it concludes that there is a good reason to believe that there was abuse. But, you know, I think what Chief Judge Barron is saying, there's still a different approach that the agency might take to the outcome of an investigation if it's been able to actually speak to the victim and not just to other people. So, you know, viewing the complaint in the light most favorable to the Does, why didn't that cause a harm, the fact that DCF was never – was, you know, encouraged not to speak to the victim directly? I don't believe that he was encouraged not to speak to the victim directly for all time. I think the instruction, as it's pled in the complaint, is that he was instructed not to speak with him that day because he still had a gun and they were afraid he was going to do damage to the family or – That's not the complaint. The complaint is that it was inconsistent with investigatory protocols. The Boston Police Department made a determination that they need to put him under arrest. They're clearly taking him away from access to the DCF at that time. That's not – I mean, I'm not – I'm just trying to figure out what you're saying. So we should just treat that as an implausible allegation when they say it was inconsistent with investigatory protocols? I'm just not understanding. Is the Boston Police Department not supposed to arrest somebody that they – No, no. No, no. The instruction to DCF not to go into the house is what they were saying was inconsistent with investigatory protocols. There's two allegations. There's two allegations. One is don't go in the house. He's a police officer. It's not evident that that's a very good reason to tell DCF not to go into a house, right, on its face. That's in the complaint. The second is don't go into the house, and then it says that was not consistent with investigatory protocols in the complaint, unless I'm misreading it. But the Boston Police Department's purpose is not to facilitate the DCF investigations. No, but their allegation is it's also not to impede it, and their allegation is they affirmatively impeded it through those instructions. I mean, the question is not whether they impeded the investigation. The question is whether the action added to the harm, whether it increased the situation under Irish and Rivera, whether there was some affirmative act that increased the harm or accelerated it. And there's no causation you say that can be attributed to that action? There is no causation, no. But the district court didn't rule on that point. On that particular fact, I'm not sure that the district court put any emphasis on that affirmative act, largely because of the fact that they were arresting him on that day, and they didn't want him in the home because he had a gun. And then the second affirmative act, like you just addressed, is the interviewing in front of the abuser. Yes, and in that case, Your Honor, I'm not sure it's an affirmative act. They're investigating the victim in a police car at the home where all of these people live. I'm not sure you're saying it's an affirmative choice to do that while the parents are outside the house. That doesn't cause the abuse or increase the abuse or the risk of harm to John Doe. I mean, he's living in this house. The abuse had been occurring four years before. Well, I would think there would be some concern that it would increase the chance that the father might retaliate. Well, they arrived at the house to talk to John Doe. Yeah, and now he knows the son has talked to the police. But he knew at this point that there had been accusations made. There had been accusations made in 1992 by a different accuser. But he doesn't know that this particular accuser has accused him, and now he knows it. I don't believe that's what the allegations are, Your Honor. That's similar to Irish. Well, I don't believe the allegations are that the accuser was unaware in this case. I don't believe that's the allegation of the complaint. I don't think it's a reasonable inference from the way that the complaint is drafted. In fact, they make much about the 1992 DCF investigation in relation to the claims against DCF. I don't believe there's any allegation in this case that when they went out to the house to talk to John Doe and then ultimately arrested him for sexual abuse, that Patrick Rose did not know that he was being accused at that time. Counsel, what about the actions around the restraining order? Because it does seem that there's pretty direct causation there. And the allegations are that the BPD did engage in an affirmative act and somehow agreed to vacate the restraining order, which, of course, puts the children back into his custody. So that seems like a pretty serious affirmative act allegation. Can you respond to it? There's an allegation that the restraining order was taken back after the criminal case had been dismissed against him. No, it was before. I don't believe so. It was January. Yeah, the restraining order is vacated just two and a half months later, which is before the criminal case is dismissed. So that's why I'm focusing on that. So the restraining order was in January, and the criminal case was dismissed in May. The district attorney's office gave him pretrial probation. These are all acts that there's no link to the police department. But there's an allegation that there is a link. But it's a bold allegation with no facts. I mean, the police department didn't take out a restraining order. So it's unclear on these facts that the police department had anything to do with that aspect of it. They investigated the case. They determined that they should arrest him. They took a lot of affirmative acts. All of them were to protect John Doe. But are you asking us to conclude that that allegation is not plausible? And I guess I'm trying to understand your argument there because there could have been more facts in the complaint. I understand what you're saying. But at the same time, there are references to the St. Clair report, which indicates that at the time, the BBT was taking all sorts of actions to try and protect its officers from civilian complaints. So why is the allegation implausible at a motion-to-dismiss stage? Because none of that happened here. The police department's role in this is to investigate crimes. They investigated a crime. They found a crime. They arrested him for a crime. They referred the case to the district attorney's office. Then they opened an internal investigation on their own recognizance by people who work for the IAD department. They then investigated the claims internally. They sustained those claims, and they were prepared to discipline him when the affidavits came in from the union. So if the union affidavits hadn't been submitted, they were going to discipline him. We don't know what that discipline was going to be, and perhaps it took way too long to do it, and I would concede that fact. You're saying the allegations in the complaint as a whole make that allegation not plausible. Yes, it's not plausible that they were acting to protect Patrick Rose. They were actively doing what they could to ensure that he was prosecuted, and they were actively doing what they could to investigate whether he committed any rules violations. Just to wrap up this point, the test isn't whether their subjective intent was to contribute to his harm. It's just whether objectively the affirmative actions they took did contribute to his harm. In Irish, there's no indication in our opinion that it was a malicious conspiracy by the officers to put the person in danger. It's just that the investigative choices they made were so egregious that it did, and I think that's the nature of the allegation here. In this case, Your Honor, this was an ongoing abuse in the home. It had happened four years before he had become a member of the Boston Police Department, and we were even aware of it. DCF was aware of it in 92, evidently with a different victim. Boston Police Department first learns of this. He's only a year on the job. They first learn of this. They send out investigators. They arrest him. I mean, there's really nothing more. The affirmative acts that were done here were done to protect the children, at least from the perspective of the Boston Police Department, and had they not gotten affidavits recanting from the mother and John Doe, they probably would have disciplined him, but we'll never know, and that's not part, obviously, of the factual allegations in the complaint. Anything further? Thank you, Your Honor. Mr. Donahue? May it please the Court, I'm Tom Donahue, and I represent the Boston Police Patrolman's Association and its former union president, Thomas Nee. The only count against the union, the only federal count against the union, is count 13, and it's the conspiracy to interfere with civil rights under section 1985. This claim has effectively been waived by the plaintiffs. In their brief, they devote less than a page and a half to this argument. Section 1985 does not come up in their reply brief at all. In that less than a page and a half argument, even though the district court dismissed this claim for numerous reasons, the plaintiffs only argued that the court erred in finding that their class is outside the scope of section 1985, and clearly their purported class is outside the section of 1985. They're not able to point to any case law that would suggest that, as they frame it, victims of BPD's internal cover-up of misconduct in the 90s to protect their own. There's no case law to suggest that that would be a protected group, such as race, like by the intent of the statute. The case they cite, too, in the First Circuit, Perez-Sanchez, only says that belonging to political groups are not protected groups. The other reasons, as the district court pointed out, that the plaintiffs' claims fail under section 1985 against the union and its former union president is that there are no allegations of class-based animus. That is, the plaintiffs make no argument or factual allegations that the union took any acts because they were in a protected group. The allegation is that the union, through its attorneys, took steps to get its union member back to work, from administrative leave back to full duty. And the allegations are that the union submitted affidavits one year after the criminal charges had been dismissed, and when the Commonwealth said that the criminal charges had been dismissed because the victims would either not cooperate or recant it in some fashion. So one year after that, while the union member is still on administrative leave, the union files affidavits through its attorney. There is no allegation in the complaint that the union attorney knew that the affidavit was false or knowingly submitted an affidavit that was coerced in some way. The allegation is that the union attorney submitted the affidavits, but that the union and the union members did not interview any of the victims. So there are no allegations that the union acted because they're in this protected group that we say is not protected under Section 1985. Another reason that the 1985 claim fails against the union is because there are no facts to support a conspiracy. There are no allegations that the union and the Boston Police Department were working together. In fact, from the allegations in the complaint, they were working against each other and at cross purposes. The union represented the union member at an internal affairs hearing. Well, BPD found against the union member and issued the complaint. Thereafter, that person, the union member, remained on administrative leave for approximately a year, at which time the union started sending letters. The letters were ignored according to the complaint. There was no action taken on the letters. So the union, through its attorneys, sent additional letters that apparently were ignored because then the union filed a grievance. Well, then the grievance was denied, and then BPD again found through its Office of Labor Relations that that grievance was properly denied. The allegation is at some point thereafter that the union member was put back to full duty. But there is no allegation at all linking the union or the BPD to acting together to discriminate against them because of their class membership. And I'd like to close by saying the only factual allegations against former President Nee are that he became union president in 1997, which is after a majority of the allegations against BPD. The only allegation is that he is a police officer. In 1995, he became aware of the allegations, and then he was union president in 1997. There are no other allegations against him. So for those reasons, I ask that you affirm the district court's dismissal of the Section 1985 claim against Mr. Nee and the BPPA. Thank you. Thank you. Mr. Driscoll. Dr. Monaghan at the office. If I may, I'd like to address Attorney Witzel's arguments because I think those are the most pertinent to what my client's appeal is about. I think the court is very well versed about what the three acts were that we are saying are affirmative, the interview, the impeding, the investigation, and the vacating the restraining order. Judge Reichelman, we simply don't have enough facts. The only thing we have is what appears to be a largely redacted and scrubbed internal affairs department file that was released in 2022. So we just don't have more as to. But it also is troubling to me that even the Boston police would be involved in a vacating or restraining order. It doesn't seem as though that these typically, these are civil in nature, and obviously a violation would be prevalent. Was that file made, incorporated into your complaint? No. So we don't have it anywhere in the record? We did not incorporate it. We made reference to the internal affairs file, but we did not specifically say, please see attached. What we did, though, is that I just want to address a handful of things, which is the St. Clair report and the use of the union lawyer. We did incorporate the St. Clair report, and I think one thing that the court can also utilize is the specific allegations about that there was a policy and procedure by the Boston police to frustrate investigations into acts of crimes committed by Boston police officers at this time, that they would purposely delay investigations. And in this instance, the affirmative conduct ultimately led to that Officer Rose had no custody restrictions in regards to his victims, including those who are not named in the complaint, the 92 abuse and Jane Doe. Also, the fact that there was no Mr. Whitesell stated that the Boston police had no control over the outcome of the criminal matter. They controlled the investigation process. Therefore, you can control the outcome. So I think in regards to the causation, I think when looking at the facts of the whole, that's something the court can bring into consideration. If there's nothing else, thank you for your time. Thank you.  All rise, please. Thank you.